**Landon V. BUTLER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17736.**

United States Court of Appeals
Eighth Circuit.

Sept. 16, 1965.

Rehearing Denied Nov. 4, 1965.

Raymond W. Bergan, of Williams, Wadden & Stein, Washington, D. C., made argument for appellant and filed brief with Edward Bennett Williams and Harold Ungar, of Williams, Wadden & Stein, Washington, D. C., and also L. D. Joslyn and T. B. Russell, of Joslyn & Joslyn, Charleston, Mo.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VAN OOSTERHOUT and MATTHES, Circuit Judges, and YOUNG, District Judge.

GORDON E. YOUNG, District Judge.

This is an appeal from a conviction on Counts I and III of an indictment consisting of five counts. The indictment was filed on June 15, 1962, against appellant and one Thomas E. Thompson, the latter being jointly charged with appellant in Counts I, II and IV. Counts I and II charged interstate transportation of stolen grain on or about October 3, 1960 until November 19, 1960 in violation of 18 U.S.C. § 2314. Counts III and IV charged interstate transportation of certain checks, "stolen, converted and taken by fraud * * *" on or about October 4, 1960, and on or about August 26, 1960

until October 6, 1960, respectively, in violation of the same statute. Count V charged a conspiracy to violate the statute, 18 U.S.C. § 371. The second count was dismissed on motion of the Government as to both appellant and Thompson. Thompson was acquitted on all the remaining counts in which he was named. Appellant was convicted on Counts I and III, and acquitted on Counts IV and V. Appellant was given a "general sentence" of ten years and was fined $10,000.00.

The trial in the court below commenced on November 4 and ended on November 21, 1963. The prosecution called twenty-eight witnesses and introduced over 250 exhibits. The defense, in addition to the two defendants and three character witnesses for defendant Thompson, called ten witnesses and introduced some 80 exhibits. It is appellant's basic contention, on appeal, that there was error tainting the verdict. Appellant does not question the sufficiency of the evidence supporting the conviction under Count I, but does contend that the proof as to Count III, even if accepted as true, does not establish a violation of 18 U.S.C. § 2314.

At the trial, it was the Government's theory as to Count I that appellant, with unlawful intent to provide himself with funds for speculation in commodities futures, caused a large quantity of grain to be removed from the elevators of Federal Grain Co. (hereinafter referred to as Federal) to those of Best Gin and Land Co. (hereinafter referred to as Best) and thereafter to be shipped in interstate commerce, with drafts ultimately diverted to appellant for his own speculative purposes. It was the Government's theory as to Count III that appellant caused the bookkeeper of Federal to draw a check on that company's account to the order of another company controlled by appellant and that he thereafter caused the check to be transported in interstate commerce from Tennessee to Missouri, the proceeds of the check being expended for appellant's speculative purposes. Appellant was the operating manager of Federal and controlled Best, a corporation owned by his family.

Appellant contends that he was denied his constitutional right to a fair trial and an impartial jury in violation of Rule 21(a) of the Federal Rules of Criminal Procedure [1] and the Fifth and Sixth Amendments to the United States Constitution due to the following errors alleged to have been committed by the trial court: (1) Denial of appellant's motions to transfer the case, (2) Denial of his motion for a continuance, (3) Denial of his motion for disqualification of jurors from certain counties, (4) Denial of his motion to quash the supplementary panel of eight veniremen from Cape Girardeau called during the first day of trial, (5) Denial of his motion for a mistrial on the ground of a prejudicial statement made by a prospective juror in the presence of the entire panel, (6) Denial of his motion for a mistrial on the ground that the court emphasized the prejudicial effect of the prospective juror's statement by instructing the panel to disregard the statement, and (7) Overruling the defense objection to questions by the prosecution in cross-examining appellant as to the details of a previous conviction.

Appellant further contends that prejudicial error resulted in the trial court's remarks in the presence of the jury to Brashears, a Government witness, during direct examination implying that Brashears' testimony was perjurious; and, also, that prejudicial error resulted from the prosecutor's misstatement of the evidence in his closing argument and the trial court's comment about the misstatement only compounded the resulting

1. Rule 21. Transfer from the District or Division for Trial. (a) For Prejudice in the District or Division. The court upon motion of the defendant shall transfer the proceeding as to him to another district or division if the court is satisfied that there exists in the district or division where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that district or division.

prejudice. Finally, appellant contends that the proof as to Count III, even if accepted by the jury, does not constitute a violation of 18 U.S.C. § 2314; and, the "general sentence" imposed upon appellant was improper.

Since there is no issue raised as to the sufficiency of the evidence it is not necessary to set forth the facts in detail except as they relate to appellant's assignments of error.

We shall discuss these contentions in the order mentioned.

### I. THE ALLEGED UNFAIRNESS OF APPELLANT'S TRIAL.

The grain involved in Count I was allegedly stolen from the elevators of Federal at several towns in southeastern Missouri, and also a town in southwestern Illinois, just across the river. The grain in question had been gathered by Federal from farmers in the surrounding area. Federal eventually became insolvent and a number of farmers lost money as a consequence. In order to avoid the claimed prejudice of trial in Cape Girardeau, Missouri, in the farming area affected by the alleged thefts of grain, appellant and co-defendant Thompson moved before trial for a transfer of the case back to St. Louis, a different division of the same district. The indictment had been returned in the latter division, but the case had been transferred to Cape Girardeau on the Government's motion. The trial court denied appellant's motion to transfer on the ground that "at this stage of the proceeding" there was not sufficient showing that a fair trial could not be had in Cape Girardeau.

When appellant's case came on for trial he renewed his motion for transfer to St. Louis and also filed motions for a continuance and for disqualification of residents of the nearby counties as jurors. The trial court denied the motion for continuance and reserved ruling on the renewed transfer motion and the motion to restrict the panel pending the *voir dire* examination of jurors, after which time they were also denied.

The selection of the jury took two full days, most of the examination of the venire being concentrated on the question of prejudicial opinions. A number of jurors were excused for cause, some of whom had preconceived opinions and others for various other reasons. After nine veniremen were excused the court declared a recess and eight additional talesmen were procured by the marshal. Appellant moved to quash this part of the panel when it was learned that these eight talesmen were residents of the City of Cape Girardeau and that the marshal had not left the city limits in selecting them.

On the second day of the jury's selection, a prospective juror stated on *voir dire,* in the presence of the entire panel, "I might mention we have did (sic) business with the people from Bell City and Vanduser and they have caused them a lot of trouble by this mishandling by the fact that the farmers didn't get their money." Appellant moved for a mistrial. The trial court denied the motion, immediately instructed the panel to disregard this remark, and excused the prospective juror who had made it. Appellant again moved for a mistrial, claiming that the instruction was unwarranted and emphasized the assertion that the farmers had lost money by reason of appellant's activities. The motion was denied.

Another prospective juror was excused because she revealed, under examination by the prosecution, that she could not view the evidence with an open mind. After a recess, the trial court reported to the panel that during the recess, "while she was in the ladies' restroom she [the prospective juror just excused] made a remark concerning one of these defendants who is now on trial." The court then held a hearing in chambers to ascertain the facts as to the alleged remark. Five members of the panel were called in and informally questioned. They stated that they were in the restroom when the prospective lady juror just excused made a remark about her surprise that appellant was out of the penitentiary. These five ladies further stated that the remark did not prejudice them against

appellant and that they could give appellant a fair and impartial trial. The court then called appellant into chambers and over the objection by the Government permitted him to be examined as to the circumstances of his prior convictions. The court concluded that in view of the remarks made by one of the prospective jurors in the presence of others that either of the attorneys for defendants would be permitted to make a brief statement of the circumstances of the convictions to the entire panel and inquire whether or not this would prejudice any of the prospective jurors against appellant. Appellant's counsel, again over objection by the prosecution, made a brief statement to the prospective jurors about the prior convictions and examined them on *voir dire* to determine if this would prejudice them against appellant. All replied that they would not be prejudiced. No objection was made by appellant to this procedure, nor did he request that any member of the panel be excused on account of this incident.

Because appellant's counsel was permitted to explain the prior conviction to the jury on *voir dire,* the trial court later allowed the Government to question appellant about the same conviction in some detail on cross-examination when appellant testified for the defense. The Government first asked whether appellant had ever been convicted of a felony, and appellant answered in the affirmative. The next question asked was the nature of the felony, and appellant's counsel objected. The trial court ruled: "Mr. Joslyn, under normal circumstances the government could only go into the fact that he had been convicted of a felony. However, in this particular instance at your request and prior to the impaneling of the jury the court permitted Mr. Butler under oath to make a statement about the matter and nature of this charge. I then permitted you to examine the jury and make a statement about the circumstances of what that charge was. Accordingly, I will now permit the government to go into it." The Government then brought out that appellant's state court conviction had been for obtaining money under false pretenses by issuing warehouse receipts for over one thousand boxcars of grain when there were only four boxcars of grain in the warehouse.

At the conclusion of the *voir dire* examination, a jury of nine men and three women was selected to hear the case. Two male alternates also sat, but no occasion arose for them to take part in the deliberations.

Appellant's motions (1) to transfer, (2) for continuance, (3) to restrict the jury panel, (4) to quash the supplementary panel; and (5) and (6) the prospective juror's remark on *voir dire* and the court's instruction in that regard—these asserted errors collectively form the basis of defendant's claim that he was denied trial by an impartial jury.

(1) *The Denial of Appellant's Protective Motions.*

■ At the outset it may be observed that the resolution of questions as to prejudice are ordinarily within the discretion of the trial judge, "The trial judge has a large discretion in ruling on the issue of prejudice * * *. Generalizations beyond that statement are not profitable, as each case must turn on its special facts." Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959).

■ Clearly the trial court did not err in postponement of its final rulings on these questions (except the motion for continuance) until after the *voir dire* examination, "The ultimate question is whether it is possible to select a fair and impartial jury, and the proper occasion for such determination is upon *voir dire* examination." Blumenfield v. United States, 284 F.2d 46, 51 (8th Cir. 1960).

■ The motion for continuance made on the day of trial was based on the alleged prejudicial effect of the publicity resulting from the receivership of Federal. Here also the trial judge is vested with wide discretion in ruling upon motions for continuance. Callanan v. United States, 223 F.2d 171, 177 (8th

Cir. 1955). But since the basis of the motion was possible prejudice, the *voir dire* examination of the jurors furnishes the most reliable evidence of whether any such prejudice existed.

■ This is also true of defendant's request that residents of five counties be excluded from the jury panel and his motion to quash the supplementary panel of eight veniremen from Cape Girardeau, which are ordinarily discretionary with the trial court.

The statement made by the prospective juror on *voir dire* in reference to the "trouble" caused "by this mishandling" was unsolicited and, of course, improper. Appellant argues that this was prejudicial and that the trial court's instruction to disregard the statement did not cure the impropriety, but, on the contrary, only magnified the prejudice resulting from this remark.

As the Government points out in its brief, while the statement of the veniremen is somewhat ambiguous the "mishandling" referred to was either a mishandling of grain or funds or both.

It was the Government's theory, and much testimony was introduced to show that when the grain was shipped from Federal to Best a theft occurred. In fact, the grain, its proceeds, and the money referred to in the indictment were alleged to have been stolen from Federal. The testimony showed that Federal became insolvent and of course it followed that some or all of those who were doing business with Federal would suffer financial loss.

■ Since the essential contents of the veniremen's statement were later presented in testimony before the jury, the court's instruction to the jury concerning the statement could not have been prejudicial. The court properly told the jury to disregard the statement, as it was not evidence.

Most of these objections are based upon publicity that had been given Federal's difficulties and appellant's connection with Federal and Best. But as this court stated in Blumenfield v. United States,

supra 284 F.2d at p. 51, "It is clear that the mere presence of adverse publicity does not *per se* establish proof of prejudice, or necessarily establish that a defendant would be unable to obtain a fair trial within the district. 'The mere fact that a juror has read newspaper accounts relative to a criminal charge is not in itself sufficient grounds for excluding a juror.' Finnegan v. United States, 8th Cir., 204 F.2d [105], 110."

During the thorough *voir dire* examination, which lasted two days, none of the jurors finally accepted indicated the slightest prejudice whatsoever, and appellant has in no way at any time raised any question about any of the twelve jurors finally impaneled at his trial. At *voir dire,* one of the jurors finally accepted stated that he had read some newspaper accounts regarding the case but did not recall what he read; another said that she had probably heard of the case; another that he had read only headlines and had no impressions about the case; another that she had read about it but had forgotten all the information except the name; another that she had read headlines but had formed no opinion; another that he had heard it discussed but formed no opinion and had not paid much attention to the case; another that he recalled seeing something about it in the newspaper but did not pay attention to it and formed no opinion; another that he read about the case but not enough to get an idea of what it was about or form an opinion; another that he only remembered a newspaper report but formed no opinion; and finally two others who had only heard of the case through newspapers and one who had never heard or read of the case and had no knowledge of it one way or the other.

■ The ultimate and decisive test is whether the jurors who tried appellant were fair and impartial. "Of course there could be no constitutional imfirmity in these rulings if petitioner actually received a trial by an impartial jury." Beck v. Washington, 369 U.S. 541, 556, 82 S.Ct. 955, 963, 8 L.Ed.2d 98 (1962).

It might be noted that the verdict of the jury indicated the opposite of bias or prejudice. It acquitted appellant on two of the four counts against him which were submitted to the jury.

■ The extensive *voir dire* examination of the jury panel and the answers of those selected and actually served certainly present "no clear and convincing proof of prejudice existing in the minds of any juror finally accepted and empaneled." Beck v. United States, 298 F. 2d 622, 629 (9th Cir. 1962).

### (2) *The Cross-Examination of Appellant.*

■ Appellant contends that the trial court erred in permitting the Government to cross-examine him as to his prior convictions. The inquiry into these convictions arose out of the "restroom incident." The trial judge, over the objection of the Government, permitted appellant's counsel to explain to the panel on *voir dire* the nature of the charges which had resulted in the prior convictions.

It does appear, as the Government has suggested, that appellant made the most of this opportunity by making an explanatory statement about his convictions to the jury with the further benefit of his counsel later examining the prospective jurors as to any possible prejudice which they might entertain in light of appellant's convictions. Later, when appellant testified during the trial, the trial court recognized the settled rule that a prosecutor, on cross-examination of an accused, may not go beyond the fact of a conviction into its details. However, the trial judge recognized, and we agree, that appellant opened up the scope of the inquiry himself and it was not prejudicial error for the Government to pursue the matter judiciously on cross-examination.

## II. THE TRIAL COURT'S REMARKS TO BRASHEARS.

■ Appellant contends that the trial judge committed prejudicial error by his remarks to Brashears, the manager of Best, called by the Government as a witness. Brashears had known appellant and Thompson, the co-defendant,

for over ten years. Thompson had given Brashears a job at Federal, and later, in April 1960, appellant had hired him as manager of Best. Before Brashears was called to testify, Bernes, the owner of Federal, had testified and disclaimed certain knowledge about relations between Federal and Best, grain shipments, and the speculations by appellant. Brashears, however, testified about a meeting in Atlanta on January 14, 1961, when the managers of all the Federal elevators met with Bernes for the purpose of discussing their future jobs and the financial trouble that Federal was experiencing in southeast Missouri. Brashears was present and on cross-examination by appellant's counsel testified that Bernes acknowledged having an interest in "a little elevator at McMullin," which was Best's location.

Earlier, the Government referring to a check signed by Thompson for Best, asked Brashears on direct examination whether he remembered anything about the check being drawn, and Brashears said that he did not. Then came the following:

"Q. Do you remember who was present when that check was drawn?

\* \* \* \* \* \*

A. Not right now I don't Mr. Mayer, No.

Q. You don't remember right now?

A. Well, if you would bring out something that would make me remember, I mean—

Q. I am just asking you do you remember who was present when that check was signed?

A. Well, Mr. Thompson was present. He has signed it.

Q. Were you present, sir?

A. I may have been.

Q. Was Mr. Butler present, sir?

A. He might have been, yes, sir.

The Court: Just a minute. Mr. Brashears, let me tell you something. You are under oath in this court.

The Witness: Yes sir.

The Court: You have previously testified about these things before the grand jury. Do you understand that?

The Witness: Yes, sir.

The Court: Now if you don't tell the truth in this court you are subject to perjury, do you understand that?

The Witness: Yes, sir.

The Court: All right. Now you think about these things."

Later during the day when the Government examined Brashears on redirect about the Atlanta meeting, defense counsel objected, saying "Your Honor, Mr. Brashears is the Government's own witness. They put him on the witness stand, telling here in court that his testimony is truthful and it is violation of all of the rules of evidence for this man to be cross-examining his own witness and we strongly object to it." The trial court said:

"Mr. Joslyn, Mr. Brashears was subpoenaed by the Government but after hearing his testimony today I am not so sure whether he is a witness for the Government or whether he is a witness for these defendants."

It appears that an important part of appellant's defense was his contention that Bernes knew of the close relationship between Federal and Best, and that he was aware of the grain transfers. Appellant contends that figuring largely in the proof of Bernes' knowledge was the Atlanta meeting referred to by Brashears in his testimony, and, appellant argues, when the trial court warned Brashears that he was under oath and cautioned him, this "effectively destroyed Brashears' utility to the defense." On the other hand, the Government argues that Brashears' testimony was not crucial to the defense, as alleged, because he did not relate any of the details of the meeting and there was earlier testimony to the same effect by the witness Purdy, who also attended that meeting. The Government further argues that the trial court's remarks to Brashears were not prejudicial error, particularly in view of all the circumstances surrounding the incident and that appellant recognized this at the time is shown by his failure to ask corrective relief of the court.

The Atlanta meeting took place sometime after the grain transactions which were the subject matter of the indictment. This remark could not have suggested that Brashears was testifying falsely about the Atlanta meeting because the subject of the testimony at the time of the court's remarks was certain checks concededly immaterial to appellant's defense.

That appellant did not consider the remarks prejudicial at the time is evidenced by the fact that he made no objection. In his brief he concedes that "the testimony about the check * * * was of no great materiality." It is true that later appellant did object to the court's remarks to the effect that he was not sure whether Brashears was a witness for the Government or the defendants.

We do not mean to imply approval of these remarks by the trial court. In the exercise of appropriate judicial restraint they should not have been made.

However, at the conclusion of the trial, the judge included in his instructions to the jury:

"It has been and will be the court's purpose to express no opinion upon the facts in this case for that is the province of the jury and if you have thought at any time during the trial that the court has indicated any opinion with respect to what the facts are you may disregard it * * * I have meant nothing by voice or manner to indicate any opinion upon what is or is not a fact in this case * * *."

As stated before, the trial of this case lasted nearly three weeks and the record discloses that it was hotly contested. As late Judge Sanborn said in Goldstein v.

United States, 63 F.2d 609, 613 (8th Cir. 1933):

"It is not always possible during the trial of a hotly contested case for a judge, however impartial he may be, to maintain in the courtroom that atmosphere of complete judicial calm which is so much to be desired. We must not overlook the fact that the human element cannot be entirely eliminated from the trial of lawsuits. * * * It is impossible to gather from the cold record, particularly when it is in narrative form, the atmosphere of the trial itself, the manner in which the words were spoken, or the probable effect, if any, which they had upon the merits of the controversy. Critical remarks of the court frequently cut both ways, if they cut at all. * * * An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits."

Considering the fact that appellant did not object to the first remarks by the trial judge quoted above during the testimony of Brashears, the court's later cautionary instruction to the jury, the fact that the later remarks by the court to which appellant did object are not manifestly prejudicial, we are convinced that the trial court did not commit error prejudicial to appellant by its remarks to the witness Brashears.

III. THE PROSECUTOR'S MISSTATEMENT.

■ Appellant argues that the prosecutor in his closing statement was permitted to misrepresent the crucial testimony of the witness Allgire. Appellant points out that on the issue of Bernes' awareness of the speculations being conducted for Federal in various names, the only testimony from a completely disinterested witness was that of Mr. Allgire; and, appellant further says that while the jury might have failed to perceive from other evidence that Bernes must have known of the speculations, the jury could hardly have rejected Allgire's testimony that, on November 30 or December 1, 1960, before the collapse of Federal he heard Bernes and appellant discuss "the losses which Federal Grain had incurred in the commodities future market through the accounts of Mrs. L. V. Butler and Best Gin & Land Company."

It appears that the Allgire testimony was first referred to in the closing argument of the defense when counsel accurately summarized the testimony, and the prosecutor interrupted, saying, "I am going to object to that, Your Honor. That was not the question that was asked, nor was that the answer given." The trial court then stated, "Well, the jury will remember what the testimony is. This is argument, this is not the evidence, this is merely the lawyer's statement about what happened. You will remember the evidence."

Later, during the closing statement for the Government, the prosecutor incorrectly summarized the testimony of Allgire to the effect that Allgire heard a conversation between Bernes and Butler about trading in futures but nothing was said in the conversation about trading in Mrs. Butler's name, or in other names or anything of that type. When counsel for appellant objected to this inaccurate summation, the trial court said: "Now, gentlemen, let's let everybody make their own argument. The jury is going to remember this conversation. I have refrained from doing anything and let you attorneys say whatever you want to say. Both of you for the defendants did the same thing. Let the jury remember. Go on with your argument." The prosecutor further commented on the Allgire testimony, questioning why the defense did not proceed to ask Allgire the details of the conversation. In its general charge to the jury after the closing arguments were concluded, the trial court instructed the jury that what counsel stated was not

evidence, but rather the evidence was as they, the jury, remembered it to be.

Appellant contends that prejudicial error resulted from the prosecutor's misrepresentation and the error was compounded by the trial court's comment about the misrepresentation. Appellant argues that taking the most generous view of the matter, the prosecutor chose to leave an "ambiguity," and, by a less generous view, he chose to persist in his misrepresentation, no longer an honest one, relying on the trial court's apparent indisposition to interfere with him. The Government concedes that the prosecutor made a misstatement but contends that it was an honest misrepresentation, and, therefore, under the language of this court in Nicholson v. United States, 221 F.2d 281 (8th Cir. 1955), the error committed was not prejudicial.

In Nicholson v. United States, supra at 283, this court stated:

> " * * * Our examination of that part of the testimony which is contained in the record indicates that defendant is probably correct in his interpretation of the import of the testimony. Each time the dispute arose between counsel the Court informed the jury that the jury was the sole judge of what the testimony was. Misconduct of counsel in argument to the jury is ground for reversal under some circumstances. *But an honest misinterpretation of testimony, such as this apparently was, without some indication of resulting prejudice does not constitute reversible error.*" (Emphasis added.)

See also Keeble v. United States, 347 F.2d 951 (8th Cir. 1965).

It should be pointed out that while appellant disputed the prosecutor's summation, no request for a mistrial was made and the trial court was not requested to instruct the jury to disregard the statement. There is nothing in the record which indicates that the misstatement was other than an honest misrepresentation and nothing more. Prefacing his summarization of the witness' testimony, the prosecutor said: "This is the way I understood * * * "—and when he concluded he said: "I think that was all that was said."

We cannot say that the misstatement was so "palpably improper as to have been clearly prejudicial," United States v. Cohen, 177 F.2d 523, 527 (2d Cir. 1949), and there is absent any clear and convincing proof of prejudice resulting from the misstatement; hence, it was not prejudicial error, and the error committed was cured by the trial court's instruction to the jury. United States v. Barrett, 280 F.2d 889 (2d Cir. 1960).

IV. SUFFICIENCY OF THE EVIDENCE UNDER COUNT III.

Appellant next argues that there was insufficient evidence to support his conviction under Count III which alleged a violation of 18 U.S.C. § 2314. The violation alleged was that appellant caused to be transported from Memphis, Tennessee, to Oran, Missouri, a $6,000 check which he knew was stolen, converted and taken by fraud from Federal. Appellant does not deny that the check in question was in fact transported from Tennessee to Missouri and he does not deny, for the purpose of this appeal, that there was adequate proof that he caused the transportation. However, appellant argues that there was no proof that the check in question had been stolen or converted, and hence it was error for the trial court to deny appellant's motion for judgment of acquittal made at the conclusion of the Government's case and of the whole case.

In summary, appellant rests its contention that the check was not stolen on two arguments: (1) He had such blanket authority in handling the affairs of Federal that the order to issue this check could not exceed the scope of this authority; and (2) Federal owed him $66,000 in commissions under his "consultant" contract, and hence he was entitled to this check. The Government contends, and we agree, that in light of all the evidence there was at least a factual issue created as to whether or not appellant

was authorized to order the issuance of the check in question for the particular purpose shown by the evidence. If such a factual issue was created, and we think it was, then the trial court did not err in overruling the motion for a directed verdict of acquittal. Once such an issue was created, it was the duty of the jury to determine whether or not the check was stolen within the meaning of 18 U.S.C. § 2314.

 In the case at bar, we have viewed the evidence in the light most favorable to the Government, Koolish v. United States, 340 F.2d 513, 514 (8th Cir. 1965). It would serve no useful purpose to discuss the evidence in this regard which both appellant and the Government have thoroughly argued in their respective briefs. Suffice it to say that we are compelled to conclude that there is substantial evidence in the record from which the jury could have found that the check in question had been stolen, and, therefore, it was not error for the trial court to deny appellant's motions for judgment of acquittal under this count.

Finally, appellant contends that even if his conviction should not be reversed, his sentence should be vacated and the case should be remanded for resentencing. The sentence imposed on appellant was a "general sentence" of ten years and a fine in the sum of $10,000 on Count I and Count III of the indictment. Appellant argues that he should have been sentenced on each count and relies on Benson v. United States, 332 F.2d 288 (5th Cir. 1964), in which the court disapproved the use of a "general sentence" and vacated it.

Both Counts I and III allege a violation of 18 U.S.C. § 2314. The maximum punishment under both is therefore identical—a fine up to $10,000 and a term of imprisonment up to ten years.

In Benson, supra, the defendant received an aggregate sentence of 15 years, which exceeded the maximum on any one particular count. The problem there, the court said, was "that no one—accused, [or the] reviewing Court * * * knows what the real sentence is." But here that problem is not involved. The sentence did not exceed that which could have been imposed on either count.

This court has previously sustained general sentences. Phillips v. United States, 212 F.2d 327 (8th Cir. 1954); Barnes v. United States, 197 F.2d 271 (8th Cir. 1952). This contention is therefore without merit.

CONCLUSION

We have carefully considered the entire record with the assistance of the excellent briefs provided by both sides. Appellant has been represented by able counsel throughout the proceeding. We are convinced that his federal right to a fair trial and an impartial jury was fully preserved in the trial court, and his conviction is based upon substantial competent evidence. Finding no prejudicial error in the record, defendant's conviction is affirmed.