**UNITED STATES of America,**
**Appellee,**

v.

**Michael Allen MATTIN, Appellant.**

**No. 19658.**

United States Court of Appeals
Eighth Circuit.

Jan. 16, 1970.

John P. Sizemore, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for appellant.

Sidney H. McCollum, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., Little Rock, Ark., with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Michael Allen Mattin was convicted of refusing to register for military training and service as required by 50 App. U.S.C. § 453.

The only issue raised on appeal concerns the conduct and scope of the voir dire examination. The defendant contends that the trial court abused its discretion: (1) by refusing to allow the defense counsel to conduct the examination; and, alternatively, (2) by refusing to ask specific questions, designated by the defense counsel, in the course of the examination. We find no abuse of discretion.

## I.

Prior to the trial, the defense counsel filed a motion requesting that he be allowed to conduct the voir dire himself. The trial court denied the motion stating that it was more appropriate for the court to do so.

The court's decision to conduct the voir dire examination himself is clearly authorized by Rule 24(a) of the Federal Rules of Criminal Procedure:

> "The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. * * *"

and by decisions of this Court. See, Ross v. United States, 374 F.2d 97 (8th Cir.), *cert. denied,* 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967).

## II.

Included in the defendant's motion was an alternate request that twenty specific questions be asked of the jurors. The court stated that it would honor most of the requests at least in substance. After conducting an extensive voir dire, the court recessed to inquire whether counsel wanted additional questions asked. Defense counsel again requested that the following questions be asked of jurors who had served in the Armed Forces and of jurors who had relatives who had served in the Armed Forces:

"4. * * *

"a. In what branch of the armed services was the service?

"b. When was the service?

"c. Was the service during the Viet Nam war?

"d. Was the service during the Korean war?

"e. Was the service during World War I?

"f. Was the service during World War II?

"g. Did you or your relative see action?

"h. Were you or your relative wounded?

"i. Was your relative killed?"

He also asked that the following questions be asked of all jurors:

"5. What is your attitude about the Viet Nam war?

"6. Do you have any objection to people who are opposed to this or any other war demonstrating in large numbers their opposition to the war?

"7. What is your attitude about the people who participate in those demonstrations?

"8. How do feel about conscientious ojectors?

"9. Do you feel that conscientious objectors are cowards?

* * * * * *

"13. Does the appearance of the defendant offend you?"

In response to the defendant's request, the court asked each of the prospective jurors who had served in the Armed Forces what branch of the Armed Forces he was in, his rank and when he served. We believe that this inquiry covered the defendant's questions 4a through 4f. The court then asked if any of the prospective jurors had any feelings of prejudice or sympathy for conscientious objectors so as to bias or influence them in any way if they were chosen as jurors.

We believe that this question covered the defendant's questions 8 and 9. The court also asked if any prospective jurors had strong feelings or just feelings against *the* draft and *the* war so as to bias them. We believe that the reference to *the* war was specific enough to cover, at least in substance, defendant's question 5.

When the court had concluded its questioning, it stated:

"If counsel have any other questions to suggest that they have not already suggested and the court has ruled on, they may approach the bench."

No further questions were suggested.

The court then concluded the voir dire examination by asking the prospective jurors a final, broad question:

"Do any of you know any reason why you cannot and will not give both the Government and this defendant a fair and impartial trial? If any of you have any doubts about it whatsoever, please stand."

The only questions, therefore, not specifically covered by the court were: (1) whether jurors who had been in service had seen action or had been wounded; (2) the war in which jurors' relatives with service had served, and whether the relatives in question had seen action or had been killed or wounded; and (3) the attitude of each of the jurors to persons who demonstrated against *the* war.

We do not believe that the trial court abused its discretion, Rule 24(a), Fed. R.Crim.P.; Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), in failing to ask the three questions. While it might have been well-advised to do so, there are practical limits to the voir dire, Pope v. United States, 372 F.2d 710, 727 (8th Cir. 1967), *vacated on other grounds,* 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), and the trial court touched the limits here.

The trial court was well aware of the defendant's view that he would be prejudiced if the jury included persons with a military background or persons with strong views against those who demonstrated against this country's partici-pation in the war. It, therefore, asked those questions which it believed necessary to reveal the potential jurors with the stated background or views. After a careful reading of the entire voir dire examination by the court, we cannot say that the examination was not as searching and penetrating as it ought to have been. See, Ross v. United States, *supra;* Butler v. United States, 351 F.2d 14 (8th Cir.), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1965).

Affirmed.