UNITED STATES of America, Plaintiff-Appellee,

v.

Elijah Wallace CHILDS, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

John Thomas CHILDS, Defendant-Appellant.

Nos. 71-2472, 71-2473.

United States Court of Appeals, Ninth Circuit.

March 23, 1972.

---

**174**

J. Mathias Myers, R. Lamar Couser, Tucson, Ariz., for defendants-appellants.

Stephen M. McNamee, Asst. U. S. Atty. (argued), Richard K. Burke, U. S.

Atty, Tucson, Ariz., for plaintiff-appellee.

Before BROWNING and GOODWIN, Circuit Judges, and LUCAS,* District Judge.

## PER CURIAM:

█ The only question requiring discussion on these appeals from convictions under 21 U.S.C. § 176a is whether, particularly in light of United States v. Carrion, 457 F.2d 200 (9th Cir. 1972), there was sufficient evidence to permit the jury to conclude that the marihuana had been unlawfully imported and that appellants knew that it had been unlawfully imported.

These elements of the offense may be established, of course, by circumstantial evidence. United States v. Oswald, 441 F.2d 44 (9th Cir. 1971); United States v. Elder, 425 F.2d 1002 (9th Cir. 1970).

The relevant events occurred in the vicinity of Lukeville, Arizona, the port of entry from Mexico on State Route 85. About 3 o'clock in the afternoon of the day in question, John Childs drove across the border to Sonoita, Mexico, approximately two miles south of Lukeville. He was accompanied by several persons, including Phillip Celaya. They returned across the border about 8:00 p. m. At approximately 11:00 p. m. a Customs agent stationed in a roadside rest area on Route 85 about three quarters of a mile north of Lukeville saw a car containing three persons (later identified as John and Elijah Childs, who were cousins, and Phillip Celaya) approach from the north and turn off on a rough, unimproved dirt road, less than two miles long, that angled east and south to the international boundary fence.

No one lived on the road. It passed through desert lands, sparsely covered with cactus and creosote brush, to an abandoned farm house and coral. It was used by a man who ran cattle in the

---

* Honorable Malcolm M. Lucas, District Judge, United States District Court for the Central District of California, sitting by designation.

area and occasionally drove his truck to the corral. It was also known to be used by smugglers of narcotics or marihuana, who either crossed the international border fence with contraband or picked up contraband at the fence; for this reason the road was kept under surveillance by Customs agents.

Some 25 minutes after entering the dirt road, appellants' car returned along the road to Route 85 with only its parking lights on. The car turned north, away from the border. The Customs agent pursued it. When the agent signaled the car to stop by turning on his red light, a paper package was thrown from the car. The sack contained two packages of marihuana weighing about one and a half pounds. The two packages were wrapped and sealed in the distinctive manner in which marihuana from Mexico is customarily wrapped and sealed. No marihuana is grown in the Lukeville area.

The car was owned and driven by Elijah Childs. John Childs was in the right front seat. Phillip Celaya was in the back seat. John Childs was wearing a T-shirt. Phillip Celaya's shirt had long sleeves. The marihuana had been thrown from the right front window of the car, and the arm of the thrower was bare.

Appellants were not charged with smuggling the marihuana from Mexico but with receiving, concealing, and transporting it after it had been unlawfully imported. From the recited facts —John Childs' trip earlier in the day to Mexican territory just across the border from the dirt road; the notorious use of the road as part of a smuggling route from Mexico; the lateness of the hour and the absence of any other reason for appellants' presence at that particular place; the distinctive Mexican-type packaging of the marihuana; and the absence of locally grown marihuana—the jury could conclude with the requisite assurance (see United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969)) that the marihuana had been transferred across the international border without being declared and presented for inspection by a Customs officer at the port of entry, and that appellants were aware of that fact.

In United States v. Carrion, *supra*, defendants were charged with smuggling marihuana into this country from Mexico. The defendants landed a light plane at an airport near Los Angeles, about a hundred miles from Mexico. A quantity of marihuana in tarp-covered boxes bearing Spanish writing was seen aboard the plane. The government had an informant's tip that the defendants were going to transport marihuana by plane from Mexico to a Los Angeles airport that day, but that evidence was not admissible. The only provable circumstances indicating that defendants had smuggled the marihuana from Mexico were that one of the defendants had a matchbook from a Mexican motel and a map of Mexico, together with other maps, in his flight bag; that a few innocuous words in Spanish were written on a slip of paper in the wallet of another defendant; and that the plane had been airborne long enough and had used enough fuel to have made a round trip to Mexico. The court concluded that the evidence was sufficient to justify an inference that the marihuana came from Mexico, but not that the possessors had smuggled the marihuana from Mexico on that date as charged.

The decision in *Carrion* may fairly be characterized as borderline. In any event, the evidence supporting the smuggling charge in *Carrion* was less persuasive than that supporting the charge in this case of facilitating the transportation of smuggled goods. In *Carrion* there was almost no admissible evidence that the defendants had been in Mexico at a time recent enough to be significant. In this case there was conclusive evidence that on the day of the offense one of the defendants had been in Mexico in the general vicinity of the dirt road terminating at the border fence. The conduct of the *Carrion* defendants in landing a light plane carrying marihuana at a Los Angeles satellite airport

was relatively neutral in respect to the specific charge of smuggling that marihuana from Mexico. The defendants in this case admittedly drove down a road that was a common site of smuggling activity to, or near, the border fence. In view of the road's terminus and the desolate country it traversed, there was no plausible explanation for defendants' presence there except facilitating the transportation of smuggled goods.

Affirmed.