**The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,**

v.

**Juan Mafnas ATOIGUE, Defendant-Appellant.**

No. 74–2445.

United States Court of Appeals, Ninth Circuit.

Dec. 23, 1974.

Janet H. Weeks, Agana, Guam (argued), of Trapp, Gayle, Teker, Weeks & Friedman, Agana, Guam, for defendant-appellant.

John D. Fuchs, Asst. Atty. Gen., Agana, Guam (argued), for plaintiff-appellee.

## OPINION

Before KOELSCH and CARTER, Circuit Judges, and ZIRPOLI,* District Judge.

ZIRPOLI, District Judge.

On January 2, 1974, Donald Minot, the manager of the Seven-Up Bottling Company plant at Maite, Guam, was found dead in his office. He had been stabbed six times. Appellant in this case was charged, in a two-count indictment, with Minot's murder, in violation of sections 189 and 190 of the Penal Code of Guam, and with robbery in violation of sections 211, 212 and 213 of the Penal Code of Guam. After a trial at which he was ably represented by counsel who also represents him in this appeal, he was convicted on both counts and sentenced to life imprisonment on the first count and five years in prison on the second. He appeals on two grounds, neither of which is meritorious.

First, appellant attacks the sufficiency of the evidence to support his conviction for murder in the first degree. He does not object to the instructions on lesser offenses, and there is no question that he did stab Minot to death, although there is some doubt as to what he used to commit the crime since the murder weapon has never been found. Thus, the only contention he makes is that the evidence does not support the jury's finding that the killing was willful, deliberate and premeditated, as required by section 189 of the Penal Code.

On appeal from a jury verdict of guilty, this court must view the evidence in the light most favorable to plaintiff; the only issue here is whether there was substantial evidence to support the conviction for first degree murder. See People v. Marquez, 109 Cal. App.2d 447, 449, 240 P.2d 1019 (1952). It is, of course, impermissible to infer the requisite premeditation from the mere fact of killing, and the burden is on the prosecution to establish premeditation beyond a reasonable doubt. Dealing with a statute with the same wording as the statute in this case, the Supreme Court of California observed that:

> Given the presumption that an unjustified killing of a human being constitutes murder of the second, rather than of the first, degree, and the clear legislative intention to differentiate between first and second degree murder, we must determine in any case of circumstantial evidence whether the proof is such as will furnish a *reasonable foundation* for an inference of premeditation and deliberation [citations omitted] or whether it "leaves only to *conjecture and surmise* the conclusion that defendant either arrived at or carried out the intention to kill as the result of a concurrence of deliberation and premeditation."

People v. Anderson, 70 Cal.2d 15, 25, 73 Cal.Rptr. 550, 447 P.2d 942 (1968). There, the court noted that there were three categories of circumstantial evidence that would justify upholding a conviction for first degree murder: (1) facts indicating "planning activity," conduct of the defendant prior to the actual killing, indicating that he intended the fatal result; (2) facts concerning the defendant's prior relationship with the vic-

---

* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California sitting by designation.

tim that would permit a jury to infer a motive based upon "pre-existing reflection" rather than "mere unconsidered or rash impulse hastily executed"; (3) facts about the manner of the killing that in and of themselves imply that it was done according to a "preconceived design." *Id.* at 26–27, 73 Cal.Rptr. at 557, 447 P.2d at 949. The focus of this analysis is on whether there is a reasonable foundation in the facts, viewed most favorably for the prosecution, to support the conclusion that the killing was the product of advance contemplation rather than impulse.

The prosecution's evidence at trial was sufficient to permit the jury to find facts that reasonably support the inference of premeditation. The most important evidence was the testimony of Jesse Castro, a friend of appellant. He testified that he and appellant went to the Bottling Company offices two days before the killing, at appellant's behest, to commit a robbery. R.T. 236–37. Castro testified that appellant told him that he would kill the man he had worked for at the Bottling Company (Minot, by reasonable inference) to avoid identification as the burglar. R.T. 237–38. When they arrived, however, appellant looked into the office and started to leave, declaring his intention "to come back later on." R.T. 239. Thereafter, Castro withdrew from the plan because "I told him I knew another plan we won't have to kill." *Id.* This testimony alone was sufficient to permit the jury to conclude that the prosecution had proved facts in both the first and second categories delineated by the California court because it supports the conclusion that there was a plan directed towards killing Minot and that there was a motive for that killing, concealment of appellant's identity.

Appellant argues that his failure to carry out his plan at the time he went to the Bottling Company with Castro was an abandonment and that therefore Castro's testimony does not support a finding of premeditation. But Castro testified only that appellant had decided not to commit the crime immediately but to "come back later on"; the jury could have concluded that he did not abandon the plan but carried it out on January 2, which was, as appellee points out, the very next business day. Hence, Castro's testimony, standing alone, could support the conviction in this case.

There was other evidence that tended to support the jury's conclusion that the crime was premeditated. Dr. Park, the physician who performed the autopsy on Minot, testified that the wounds were inflicted by a long double-edged implement like a bayonet. R.T. 155–56. Rudolfo Dungan, with whom appellant had lived for several days prior to the killing, testified that he had possessed a bayonet which had disappeared at about the time appellant left for the Bottling Company to commit the crime. R.T. 231. Both he and Mrs. Josephine Guerrero testified that appellant took with him, when he departed, an object wrapped in clothing that was about twelve inches long and four inches in diameter. R.T. 218–19; 226. Thus, the jury had a reasonable basis for concluding that appellant had taken the murder weapon with him when he left to go to the Bottling Company, another fact that implies a plan made in advance of the killing. Appellant makes much of Dr. Park's testimony that the wounds were probably not made by a kitchen knife, which is sharp on only one side, in conjunction with Mr. Dungan's testimony that he had a kitchen knife that also disappeared at the time appellant left. While it does appear that the prosecution attempted, at trial, to demonstrate that the object wrapped inside appellant's clothes was the kitchen knife, the jury could nevertheless have concluded that he was carrying the missing bayonet. Thus, the fact that Dr. Park testified that a kitchen knife could not have inflicted the wounds involved does not necessarily deprive Guerrero's and Dungan's testimony of probative force.

■ Finally, it is uncontested that appellant fled Guam the day after the crime. See R.T. 350. While evidence of flight is not sufficient alone to support a

conviction for first degree murder, People v. Jimenez, 95 Cal.App.2d 840, 844, 214 P.2d 15 (1950), where the jury could conclude that the flight was planned prior to the crime, it supports the finding of premeditation. Here, appellant did remove his clothing from the place he had been staying when he departed for the Bottling Company plant, and the jury could have concluded that he took his clothes with him to facilitate his escape, although he contends he took them to be washed.

Defendant testified in his own behalf, but his testimony does not undermine the substantiality of the evidence of premeditation. He admitted the killing, R.T. 350, 353, 365, but explained that he had not contemplated any crime at the time he went to the Bottling Company plant to pick up a check for work he had previously done there. When Minot refused to pay him for two of the three days he worked, he testified, he and Minot got into a scuffle, Minot hit him in the forehead, where he had been wounded in Viet Nam, and he "went into a rage." R.T. 350. He then grabbed half a pair of scissors that was lying nearby and stabbed Minot. Realizing what he had done, he decided to try to escape and committed robbery to obtain money for a plane ticket to Hawaii. The jury was not compelled to believe any of his testimony. Indeed, appellant's statement that he killed Minot with scissors was inconsistent with Dr. Park's testimony about the weapon and with his position in this court that Guerrero's and Dungan's testimony is not probative because it shows only that he might have taken a kitchen knife, which Dr. Park had ruled out as the weapon.

■ Viewing the evidence in the light most favorable to the appellee, therefore, the court holds that it substantially supports the jury's conclusion that appellant was guilty of murder in the first degree. Castro's testimony permitted the conclusion that appellant was, on January 2, 1974, carrying out the robbery plan he had deferred two days earlier, and that this plan contemplated Minot's death.

Guerrero's and Dungan's testimony permitted the conclusion that appellant had taken a bayonet with him to carry out his plan. The fact that appellant took his clothes with him permits the conclusion that he then intended to make good his escape following the crime. Taken together, this evidence clearly is sufficient to support the jury's verdict.

■ Appellant's second contention is that his motion for a transfer under Fed. R.Crim.P. 21 should have been granted. Rule 21(a) permits a transfer where "there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." Defendant's contention here is that the prejudice to him was caused by the publicity surrounding an emergency public meeting of the Select Committee on Crime of the Guam Legislature. He does not contend that this meeting or the publicity attendant upon it had anything to do with him, but only that it created an undesirable "law and order" atmosphere in Guam that made it impossible for him to obtain a fair trial. The court is unaware of any case holding that such generalized publicity provides a basis for a transfer under Rule 21. In United States v. Florio, 13 F.R.D. 296 (S.D.N.Y.1952), upon which appellant relies, for example, it was clear that the publicity generated by the hearings there related directly to the defendant. Appellant's argument here seems to be that no criminal trials could be held on Guam during the period of the anticrime effort because an aroused populace there would not fairly judge persons accused of crime. Such a broad doctrine could wreak havoc with the Island's judicial system and severely disrupt the orderly disposition of criminal cases in other districts since the rise in crime has become a public issue that can generate the sort of public inquiry involved in this case.

It is clear, finally, that trial counsel for appellant was not impeded by any trial court rulings during the voir dire

from inquiring into each juror's knowledge about this case or about the existence, activities or statements of the Select Committee on Crime. Counsel ably utilized the voir dire, and found that only a few of the jurors had any knowledge on any of these subjects. The defense did not exhaust its peremptory challenges. The transcript demonstrates that appellant was not impeded in the least obtaining a fair and impartial jury.

The judgment is affirmed.