**UNITED STATES of America,**
**Plaintiff/Appellee**

v.

**Willie Cruso FREE,**
**Defendant/Appellant.**

No. 86–5050.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1987.

Decided March 9, 1988.

John P. Martin, Deputy Federal Public Defender, Los Angeles, Cal., for defendant/appellant.

James E. Berliner, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff/appellee.

Before O'SCANNLAIN and LEAVY, Circuit Judges, and KING,* District Judge.

SAMUEL P. KING, District Judge:

Defendant/Appellant Willie Cruso Free ("Free") was found guilty by a jury and convicted of first degree murder (in violation of 18 U.S.C. § 1111), conveyance of a weapon within a federal penal institution (in violation of 18 U.S.C. § 1792), and assault on a federal officer (in violation of 18

U.S.C. § 111). The jury found Free not guilty of two additional counts of assaulting federal officers.

Free appeals his conviction pursuant to 28 U.S.C. § 1291 on two grounds: (1) the District Court abused its discretion in denying Free's pre-trial motion to sever the trial of the murder and weapon conveyance charges from the assault charges; and (2) the evidence at trial was insufficient to support the murder and weapon conveyance convictions. We affirm.

## I. FACTS

In August 1983, Free was incarcerated in the maximum-security United States Penitentiary at Lompoc, California ("USP Lompoc") to serve a life sentence plus eleven years. Free and co-inmate Louis Codianni ("Codianni") struck an agreement whereby Free would supply Codianni with drugs and protection in exchange for sexual favors.

On September 7, 1983, a prison officer discovered Free and Codianni preparing to engage in homosexual intercourse. As a consequence, both inmates were sent to the prison's disciplinary segregation unit.

Upon release from the segregation unit on September 16, 1983, Free and Codianni were assigned to separate locations in the prison. However, Free monitored Codianni's behavior, paying informants to report Codianni's behavior to him. From these informants, Free learned that Codianni had found a new supplier of drugs.

From all outward appearances, Free maintained a cordial relationship with Codianni. In fact, Free had advanced $500 to obtain drugs for Codianni. However, testimony was adduced at trial to the effect that Free learned on September 18, 1983 that Codianni was going to blackmail Free. Codianni allegedly told Free that Free had been "played for a sucker," and would not receive the drugs for which Free had previously paid. Codianni warned Free that, should Free take any recourse against Codianni, Codianni would use his influence

* Honorable Samuel P. King, Senior United States District Judge, District of Hawaii, sitting by des-

ignation.

with prison officials to Free's detriment. It was on September 18, 1983 that Free killed Codianni by inflicting multiple stab wounds to Codianni's body.

At trial, the government could offer no witnesses to the initiation of the altercation between Free and Codianni. Government witnesses came on the scene after the fight had already begun. These witnesses did testify that Free had continued to stab Codianni despite the order by unarmed prison officers to stop. Free repeatedly stated that he wanted Codianni to die. The subsequent autopsy conducted by a forensic pathologist revealed at least sixty-seven stab wounds to Codianni's head, neck and upper body. Upon discontinuing his assault on Codianni, Free refused to relinquish the knife to authorities, boasted of his completed act, and hampered efforts of others to assist Codianni.

Free justifies his killing Codianni on the grounds of self-defense. According to Free, moments after Codianni's alleged blackmail threat, he was distracted by someone calling his name. While distracted, Codianni allegedly pulled a knife from beneath a bench where he had previously concealed it. An examination of the bench and the crime scene revealed no evidence of tape or tape residue. Free contends that he turned back towards Codianni just before being attacked and wrestled the knife from Codianni, incurring a cut to his knee. Examination of Free by prison officers did not reveal any injury to his knee, but only a small "paper cut" on one finger. After gaining control of the knife, Free admittedly stabbed Codianni to death.

After being advised of his constitutional rights, Free made numerous statements about the attack, including disclosures to an FBI agent. The agent testified at trial that Free explained to him that the knife used to kill Codianni was not "his type of weapon." The subject weapon was a sharpened dining room knife to which black electrical tape had been attached to augment the handle.

Free produced seven inmate witnesses to support his self-defense assertion. Several testified to threats allegedly made by Codi-

anni to kill Free. Other related efforts by Codianni to obtain a knife in order to kill someone. One witness testified to observing Codianni slapping Free the day before the stabbing incident. Two defense witnesses claimed to have observed the beginning of the incident, testifying that Codianni initiated the attack on Free.

In March 1984, some six months following the stabbing of Codianni, Free and other inmates participated in disruptive behavior, including the throwing of objects and squirting of caustic substances at prison officers. One officer testified that he was struck in the eyes by noxious fluid directed at him by Free, and required medical attention.

To thwart this altercation, officers began transferring the disruptive inmates to "clean" cells and disarming them of the substances used in the assault. Before Free was removed from his cell, he allegedly assaulted a second officer with the caustic substance. In order to remove Free from his cell, a squad of officers entered Free's cell with a protective shield. The officer manning the shield, a staff paralegal, slipped and was wedged in the cell door. The officer testified at trial that all he saw was a hand come over his shield. Free surrendered a knife to prison officials after the attack on the paralegal. The knife was homemade, believed to have been fashioned from the binder of a law library book. The paralegal was later treated for superficial lacerations to his shoulder.

Free was arraigned on October 28, 1985 and entered not guilty pleas to the charges. On December 16, 1985, Free moved to sever trial of the three assault charges (Counts III, IV, and V) from the first degree murder (Count I) and weapon conveyance (Count II) charges. The court denied Free's severance motion, entering its written order on December 18, 1985. The jury trial commenced on January 21, 1986. At no time during the trial did Free renew his motion to sever. On January 27, 1986, the jury returned with its verdict, finding Free guilty of Counts I, II and V and not guilty of Counts III and IV. Count V charged Free with assault in connection with the

knife wounds inflicted on the prison paralegal.

## II. DISCUSSION

■ On this appeal,[1] Free does not dispute the propriety of the joinder of the charges, but contends that the denial of his motion for severance to avoid prejudice was error. The gist of Free's contention that he was unduly prejudiced is that the level and quality of evidence on Counts I (murder) and II (conveyance of a weapon) were much weaker than that supporting conviction of the three assault charges. Free asserts that logic dictated that he take the stand in defense of the assault charges but not the murder charges. Free contends that had he exercised his right to testify on his own behalf on the assault charges he would have opened the door to introduction of his prior murder conviction which could have potentially impaired his defense of the murder charges. For this reason, Free elected not to testify, thereby, prejudicing his assault defense.

### A. *Failure to Renew Severance Motion*

■ In this circuit, failure to renew a motion to sever at the close of evidence at trial constitutes a waiver of the right to appellate review of a denial of such a motion. *United States v. Loya*, 807 F.2d 1483, 1494 (9th Cir.1987); *United States v. Burgess*, 791 F.2d 676, 678 (9th Cir.1986); *United States v. Figueroa–Paz*, 468 F.2d 1055, 1057 (9th Cir.1972). The renewal requirement, however, is not an inflexible one. A denied motion for severance will be preserved for appeal, absent a post-evidence renewal, where "the motion accompanies the introduction of evidence deemed prejudicial and a renewal at the close of all evidence would constitute an unnecessary formality." *United States v. Kaplan*, 554

F.2d 958, 965 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

Free did not renew his pre-trial motion to sever. Not surprisingly, therefore, Free argues that the two-part *Kaplan* exception has been satisfied. We are not so convinced.

Free asserts that the district court judge's comment that he was taking the motion under submission rendered renewal an "unnecessary formality." This assertion is without merit. One of the rationales underlying the renewal requirement is that failure to do so suggests that the prejudice contemplated at the time of the pre-trial motion resulting from the joinder may not seem so substantial to the movant at the time of trial. *Williamson v. United States*, 310 F.2d 192, 197 (9th Cir.1962). A timely-renewed motion enables the trial court to assess whether a joinder is prejudicial at a time when the evidence is fully developed, the parties are best prepared and the witnesses' recollections freshest. Moreover, without a renewal requirement, a defendant could deliberately fail to make a meritorious motion and wait to see what verdict the jury returns without undue fear of a guilty verdict. Such a strategy runs contrary to the very purpose underlying joinder, which is fair and efficient judicial administration.

Since the district court entered its denial of Free's motion prior to trial, Free cannot rely on the court's taking his motion under submission as continuing into and throughout the trial. The court had no reason to believe that the prejudice cited by Free on his initial motion came to fruition, was as damaging as suspected, or was not cured during trial. Consequently, the second prong of the *Kaplan* test was not satisfied.

---

1. Free argued as part of his original motion that the assault and murder counts were improperly joined in the indictment under Fed.R.Crim.P. 8(a). Free abandoned this argument on appeal. Rule 8(a) provides that "[t]wo or more offenses may be charged in the same indictment ... if the offenses charged ... are of the same or similar character." Joinder under Rule 8(a) is the rule, severance the exception. *United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir.1983). It

is fairly clear in this case that, although separated by time and involving different victims, the murder charge and the assault charges are of same or similar character. All the alleged offenses involved acts of violence committed in a federal prison. All counts charged unjustified, premeditated acts committed by Free himself. The murder and assault charges allege use of a homemade knife. These similarities justify joinder in the first instance under Rule 8(a).

Moreover, the specific facts of the *Kaplan* case suggest that Free's reliance upon it is misplaced. In *Kaplan*, five different defendants in a multiple defendant case moved for severance prior to trial on the grounds that the joinder of a witness/co-defendant was prejudicial. 554 F.2d at 966. At trial, the witness refused to testify and allegedly exculpatory statements became known. When this knowledge came to the attention of the defendants, three renewed their severance motion during trial, but prior to the close of evidence. The remaining two defendants did not renew at any time during trial. As to the defendants who renewed their motion during trial, this court held that they had "diligently pursued" severance and were not deemed to have waived their right to appellate review although the renewal did not come at the close of evidence. *Id.* As to the non-renewing defendants, a waiver of the right to appeal the pre-trial denial of severance was effected.

Free's situation more closely resembles that of those defendants in *Kaplan* who did not make any effort at trial to renew their motion. Free did not "diligently pursue" severance at any time during trial. Contrary to Free's assertion, his diligent pursuit prior to trial does not carry over to trial rendering any renewal efforts mere formality.

### B. *Sufficiency of the Evidence*

In reviewing the sufficiency of the evidence to support a finding of guilt, "the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, *any* rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979) (emphasis in original); *see also United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.), *amended* 798 F.2d 1250 (9th Cir.1986); *United States v. Patterson*, 678 F.2d 774, 780 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982).

█ The essential elements of first-degree murder are: (1) the act or acts of killing a human being; (2) doing such act or acts with malice aforethought; and (3) doing such act or acts with premeditation. *Ornelas v. United States*, 236 F.2d 392, 383–94 (9th Cir.1956). The elements of first-degree murder can be established by circumstantial evidence and inferences drawn from it. *United States v. Lesina*, 833 F.2d 156 (9th Cir.1987); *United States v. Steel*, 759 F.2d 706, 713 (9th Cir.1985). However, mere suspicion or speculation cannot be the basis for the creation of logical inference. *United States v. Thomas*, 453 F.2d 141, 143 (9th Cir.1971) (per curiam), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972).

█ It is undisputed that Free performed the acts resulting in Codianni's death. Malice can be inferred from the type of weapon used by the defendant and the brutality exhibited by the defendant in using that weapon. *United States v. Vallez*, 653 F.2d 403, 406 (9th Cir.), *cert. denied*, 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed. 2d 223 (1981). Premeditation may also be established circumstantially. Relevant circumstantial evidence includes, *inter alia*, the defendant's prior relationship to the victim, the defendant's carrying of the murder weapon to the scene, and the manner of the killing. *Guam v. Atoigue*, 508 F.2d 680, 681–82 (9th Cir.1974).

From our review of the evidence, we conclude that a rational juror, considering the evidence produced at trial as a whole in light of Free's evidence supporting a self-defense justification, could have found all the elements of first-degree murder beyond a reasonable doubt. The brutality of Free's attack, Free's expressed predisposition to commit murder, Free's relationship with and suspicion of Codianni, and the lack of evidence in support of and that contrary to Free's contention of a concealed weapon, *inter alia*, adequately support the guilty verdict on the first degree murder charge.

█ The essential elements of the offense of conveyance of a weapon within a federal penal institution are: (1) defendant was carrying, conveying or transporting a

weapon; (2) with the knowledge that he was so acting; regardless of his intent with respect to the use of the weapon. 18 U.S.C. § 1792. *See Vallez*, 653 F.2d at 407. While mere possession of a weapon within a federal prison is not a crime under 18 U.S.C. § 1792, *United States v. Kirkland*, 637 F.2d 654, 656 (9th Cir.1980), evidence of possession may support the inference that an earlier conveyance occurred. *Vallez*, 653 F.2d at 407.

■ Circumstantial evidence supports the inference of an illegal conveyance prior to the killing and direct evidence establishes post-homicide conveyance. Most importantly, Free does not dispute that he refused to relinquish the weapon after his stabbing of Codianni until he was safe in his cell. The jury's verdict on Count II is sufficiently supported.

We, therefore, AFFIRM.