918 F.2d 958
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant
v.
Juan M. CASTELLANOS, and Jose A. Tamayo,
Defendants-Appellants, Cross-Appellee.
 Nos. 89-6205, 89-6231, and 89-6287.
 United States Court of Appeals, Sixth Circuit.
 Nov. 19, 1990.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendants-appellants Juan Miguel Gonzales Castellanos and Jose Aristides Tamayo appeal their jury convictions and sentences for possession with intent to distribute cocaine. Cross-appellee United States of America appeals the district court's grant of a two-level reduction to defendant-appellant Castellanos for acceptance of responsibility. For the following reasons, we affirm.
 
 I.
 
 2
 On March 1, 1989, a federal grand jury returned an eight-count indictment against defendants-appellants Juan Miguel Gonzales Castellanos and Jose Aristides Tamayo. The indictment resulted from certain events alleged to have occurred over a four month period.
 
 
 3
 Hugh Ivy purchased cocaine from one Elmo Green on several occasions. Ivy met Tamayo and Jose Rafael Diaz while making purchases from Green. During one of Ivy's purchases, in July 1988, Green and Tamayo brought two and one-half or three kilograms of cocaine to Kentucky to sell to Ivy. The cocaine purchased by Ivy was given to Gibson for resale.
 
 
 4
 In the transaction that led to this case, Ivy placed an order for sixteen kilograms of cocaine through Diaz. In November 1988, Tamayo and Diaz brought the sixteen kilograms of cocaine to Lexington, Kentucky. Diaz called Ivy, and Ivy met Diaz and Tamayo in a hotel room. Tamayo and Diaz gave Ivy one kilogram of cocaine and Ivy gave it to Gibson. Gibson paid Ivy $20,000.00. Ivy kept $1,000.00 and gave $19,000.00 to Diaz and Tamayo. Gibson, Ivy, Diaz and Tamayo went to a lounge in Florence, Kentucky, where they left the remaining fifteen kilograms of cocaine in the trunk of a car. Gibson was to remove the cocaine from the trunk of the car, take it to another location and sell it, place the proceeds in the trunk of the car and then call Ivy so all of them could depart. Ivy, Tamayo and Diaz waited for three hours before Gibson finally called and explained that there was a problem with the money. Ivy, Tamayo and Diaz did not hear from Gibson for several weeks.
 
 
 5
 They began to search, without success, for Gibson in an effort to obtain the fifteen kilograms of cocaine or the money. During a January 8, 1989, telephone conversation, Tamayo indicated to Ivy that he was sick and that he needed Ivy to bring him some medicine. When Ivy arrived at Tamayo's motel room, Castellanos and Diaz emerged from the bathroom. Ivy was hit on the head with a weapon, tied up and placed in the trunk of a car. Apparently, Ivy was being held for ransom until Gibson returned the cocaine or the money. Castellanos, Diaz and Tamayo attempted to abduct Gibson also but failed. Ivy was eventually set free.
 
 
 6
 Ivy introduced his ex-brother in law, Johnny Harrod, to Castellanos, Tamayo and Diaz as someone who could help locate Gibson. Unknown to Ivy, Harrod was a government informant. Between January 25, 1989 and February 9, 1989, Harrod was able to record approximately twelve different conversations. FBI agent Welsh was also introduced as someone who could help locate Gibson. Harrod introduced Castellanos and Ivy to FBI Agent Tom Nunnemaker as representing a possible connection from Louisville. Tape recordings obtained by Harrod revealed a plan to lure Gibson out of hiding. Under the plan, Agent Welsh was to entice Gibson to a motel to purchase cocaine on February 10, 1989.
 
 
 7
 On February 10, 1989, Welsh had two teams of agents positioned at the motel. When Castellanos and Diaz arrived, gunfire broke out. Castellanos was injured and Diaz was killed. Tamayo, who had arrived at the motel with Castellanos and Diaz, remained in the car and was arrested with Castellanos.
 
 
 8
 Count one of the eight-count indictment charged Castellanos, Tamayo, Hubert Ivy, Jr. and Darrell Gibson with conspiring to distribute and possess with intent to distribute approximately sixteen kilograms of cocaine, in violation of 21 U.S.C.Sec. 846. Count two charged Castellanos, Tamayo, Ivy and Gibson with aiding and abetting one another in possessing with intent to distribute approximately sixteen kilograms of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Count three charged defendants-appellants with conspiring with one another to kidnap Darrell Gibson in violation of 18 U.S.C. Sec. 1201(c) and 18 U.S.C. Sec. 2. Count four charged defendants-appellants with aiding and abetting each other to kidnap and with kidnapping Hubert Ivy, Jr., in violation of 18 U.S.C. Secs. 1201(a)(1) and (2). Count five charged defendants-appellants with aiding and abetting each other in the use and carrying of a firearm during and in relation to a crime of violence, to with the kidnapping of Ivy, in violation of 18 U.S.C. Secs. 924(c)(1) and (2). Counts six and seven charged defendants-appellants with aiding and abetting each other in the use and carrying of a firearm during and in relation to a crime of violence, to with the conspiracy to kidnap Gibson, in violation of 18 U.S.C. Secs. 924(c)(1) and (2). Finally, count eight charged defendants-appellants with aiding and abetting each other in forcibly assaulting and resisting various FBI officers who were engaged in the performance of their official duties and with using deadly and dangerous weapons while so resisting, in violation of 18 U.S.C. Sec. 111 and 18 U.S.C. Sec. 2. Both Gibson and Ivy pled guilty to Count 1 of the indictment. Castellanos and Tamayo were convicted on all Counts. Castellanos and Tamayo appeal their convictions and sentences.
 
 II.
 
 9
 Castellanos and Tamayo appeal their convictions and sentences on several grounds. The issues are: (1) whether the trial court abused its discretion in denying the motions to sever counts and defendants; (2) whether the trial court properly instructed the jury as to the conspiracy in Count one; (3) whether the trial court properly grouped certain offenses pursuant to the sentencing guidelines; and (4) whether the trial court's determination that Tamayo was more than a minimal participant was clearly erroneous. On cross appeal, the government contends that the trial court's decision to grant Castellanos a two-level reduction for acceptance of responsibility was clearly erroneous.
 
 A.
 
 10
 Appellants first argue that the trial court erred in failing to grant them separate trials and in failing to sever the offenses. We review the trial court's failure to sever under an abuse of discretion standard. United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). In order to succeed on a motion for severance, " 'the defendant has the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials.' " United States v. Dempsey, 733 F.2d 392, 398 (6th Cir.), cert. denied, 469 U.S. 983 (1984) (citations omitted from original text).
 
 
 11
 Tamayo contends that he was substantially and specifically prejudiced by being tried with Castellanos. Tamayo asserts that the evidence against Castellanos in Counts three through eight was direct and overwhelming. On the other hand, Tamayo contends that there was little, if any, evidence against him on those counts. Tamayo argues that he was convicted on Counts three through eight based on the direct and overwhelming evidence related to Castellanos. Castellanos argues that he was substantially prejudiced by being tried with Tamayo because the evidence against him in Count one was weak but was very strong against Tamayo. Castellanos and Tamayo also contend that the trial court erred by failing to grant separate trials on Counts one and two because those counts involved separate transactions and thus different proof. Such failure, appellants argue, by the trial court resulted in appellants being convicted in Counts one and two from evidence derived from the remaining counts. In sum, appellants contend that the trial court's failure to sever the counts and the defendants resulted in a prejudicial spillover effect.
 
 
 12
 We need not reach the issues presented by Castellanos and Tamayo concerning the trial court's failure to sever the counts and the defendants. Neither appellant renewed their motion for severance at the conclusion of the government's case, nor at the conclusion of all the evidence in the case. We held in United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987) (citation omitted), that for cases occurring after January 1, 1987, "a severance motion will be deemed waived if it is not renewed at the end of the evidence." See also United States v. Brown, 870 F.2d 1354, 1360 (7th Cir.1989); United States v. Free, 841 F.2d 321, 324 (9th Cir.) cert. denied, 108 S.Ct. 2042 (1988); United States v. Coronel-Quintana, 752 F.2d 1284, 1288-89 (8th Cir.), cert. denied, 474 U.S. 819 (1985). Therefore, we hold appellants' claims regarding the trial court's failure to sever are not reviewable. Even assuming arguendo, however, that appellants' severance claims were reviewable, we have held complaints in substantially similar circumstances that a prejudicial spillover effect did not warrant severance and would do so here also. See, e.g., United States v. Moore, Nos. 88-5932, 88-5942 (6th Cir. October 9, 1990).
 
 B.
 
 13
 The second issue is whether the trial court properly instructed the jury as to the conspiracy in Count one. Castellanos contends that the jury instructions on Count one was an overly broad instruction. The trial court considered and overruled Castellanos' objection below. Our inquiry is "whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." Teal v. E.I. Dupont de Nemours and Co., 728 F.2d 799, 802 (6th Cir.1984). We find Castellanos' challenge to the trial court's jury instructions without merit.
 
 
 14
 The portion of the jury instructions relating to count one to which appellant objected stated:
 
 
 15
 What the evidence in this case must show beyond a reasonable doubt is:
 
 
 16
 (1) An agreement between two or more individuals to distribute
 
 
 17
 (2) Illegal drugs such as cocaine, with
 
 
 18
 (3) Intent to distribute.
 
 
 19
 (4) That the defendant willfully became a member of this agreement of conspiracy.
 
 
 20
 J.App. at 60-61. The government introduced proof of Castellanos' role in prior conspiracies even though these prior conspiracies did not relate to the cocaine conspiracy for which appellant was being tried. Castellanos contends that the above instruction allowed the jury to convict upon proof of similar but different cocaine conspiracies. Castellanos asserts that the following proposed instruction would have cured the problem:
 
 
 21
 What the evidence in this case must show beyond a reasonable doubt is:
 
 
 22
 (1) That on or about the 1st day of November, 1988, and continuing up to and including the 10th day of February, 1989;
 
 
 23
 (2) In the Eastern District of Kentucky, and elsewhere;
 
 
 24
 (3) Two or more individuals agreed or conspired with one another;
 
 
 25
 (4) To distribute or possess with intent to distribute;
 
 
 26
 (5) cocaine;
 
 
 27
 (6) Weighing sixteen (16) kilograms, more or less; and
 
 
 28
 (7) That the defendant willfully became a member of such agreement or conspiracy.
 
 
 29
 Brief of Castellanos at 5. With respect to Count one, the trial court instructed the jury in part as follows:
 
 
 30
 Count 1 of the indictment charges that beginning on or about November 1, 1988, and continuing up to and including February 10, 1989, in the Eastern District of Kentucky and elsewhere, the defendants violated Section 846 of Title 21, United States Code, that is, did conspire to distribute and to possess with intent to distribute 16 kilograms, more or less, of cocaine, a Schedule II controlled substance. Title 21, United States Code, Section 846, provides in pertinent part that: Any person who attempts or conspires to commit any offense defined in this subchapter is guilty of an offense against the United States.
 
 
 31
 In your consideration of the conspiracy events as alleged in the indictment....
 
 
 32
 J.App. at 59-63 and 69-73. Reviewing the instructions given by the trial judge concerning Count one, we find that appellant's proposed instruction was in effect given. Taken as a whole, we think it is clear that the instructions with respect to Count one provided the jury with sufficient guidance because the proposed curative instruction was included in such instructions.
 
 C.
 
 33
 The third issue raised by appellants is whether the trial court properly grouped certain offenses pursuant to the sentencing guidelines. Counts three and four of the indictment involved kidnappings. Section 2A4.1(b)(5) of the Sentencing Guidelines states:
 
 
 34
 If the victim was kidnapped, abducted, or unlawfully restrained to facilitate the commission of another offense: (A) increase by 4 levels; or (B) if the result of applying this guideline is less than that resulting from application of the guideline for such other offense, apply the guideline for such other offense.
 
 
 35
 The trial court determined that both the Count three kidnapping and the Count four kidnapping were committed to facilitate the possession and distribution offenses in Counts one and two. Therefore, pursuant to Sec. 2A4.1(b)(5) of the guidelines, the adjusted offense levels for Counts one and two were applied to Counts three and four, raising those levels to 39 and 42, respectively.
 
 
 36
 Under Sec. 3D1.2 of the United States Sentencing Guidelines (USSG), courts are required to group all counts involving substantially the same harm. Counts involve substantially the same harm "when one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. Sec. 3D1.2(c). Hence, Tamayo contends that Count three, the charge for kidnapping Gibson, should have been grouped with Count one, the charge for attempting and conspiring to distribute and possess with intent to distribute cocaine.
 
 
 37
 Since Counts three and four were adjusted to the level required by Counts one and two pursuant to guideline Sec. 2A4.1(b)(5), it appears that they should have been grouped together under Sec. 3D1.2(c). The Guidelines are not perfectly clear on this issue. First, it is clear that Counts three and four could not be grouped together because they involve different victims and hence do not involve substantially the same harm. U.S.S.G. Sec. 3D1.2(b).
 
 
 38
 At Tamayo's sentencing hearing, the government argued several reasons why the trial court should not group Count three, chief of which was Application Note 8. See Tr. of Sentencing at 35-39. Application Note 8 to Sec. 3D1.2 states in part:
 
 
 39
 Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count.
 
 
 40
 The case before us presents the scenario described in Application Note 8. In this case, the Guidelines for Counts one and two provide for an adjustment for only one occurrence of kidnapping. Hence, if both Counts three and four are grouped with Counts one and two, there is no incremental punishment for the second, separate kidnapping victim. Because the actual kidnapping of Ivy resulted in physical injury, Count four was reasonably treated as the more serious count under Application Note 8. Therefore, Count three, the kidnapping of Gibson, was treated as a separate count. Application Note 8 provides justification for the trial court's action with respect to grouping.
 
 
 41
 During the trial judge's inquiry on the issue of grouping, the probation officer admitted that although the Guidelines were somewhat contradictory, they provided for the exclusion of Count three from the grouping. See Tr. of Sentencing at 40. This, unfortunately, suggests that the Guidelines should be more clear regarding grouping. Notwithstanding any contradictory language in the Guidelines, albeit unfortunate, we recognize the fact that the action taken by the trial judge is allowed under the Guidelines. Hence, on the particular facts before us, we find that the trial judge did not err.
 
 D.
 
 42
 The final issue is whether the trial court's determination that Tamayo was more than a minimal participant was clearly erroneous. See United States v. Silverman, 889 F.2d 1531, 1540 (6th Cir.1989) (with regard to a defendant's role in the offense, the standard of review is clearly erroneous standard). Section 3B1.2 grants the sentencing judge discretion to decrease a defendant's offense level based on a defendant's role in the offense. Appellant Tamayo contends that the sentencing judge erred in failing to lower Tamayo's adjusted offense level because he was a minimal participant. Tamayo's argument is without any support in the record.
 
 
 43
 Minimal participation generally refers to single acts and defendants who are "plainly" the least culpable. U.S.S.G. Sec. 3B1.2 n. 1 and 2. Further, Sec. 3B1.2's downward adjustment is intended to be used infrequently. U.S.S.G. Sec. 3B1.2 n. 2. The evidence presented at trial dispels any possible argument that Tamayo was a minimal participant. He participated in more than one illegal delivery, he participated in the threatening and kidnapping activities and he had full or at least substantial knowledge of the scope of the conspiracy. See United States v. Sloman, 909 F.2d 176, 182 (6th Cir.1990) (court rejected minimal participation argument when evidence demonstrated more substantial participation). Addressing and rejecting appellant's argument during sentencing, the trial judge stated, "Maybe he was an assistant to a mule; then again maybe he was the kingpen. We don't know.... I will not attribute to him as being the kingpin, but I certainly will not attribute to him being the minor player." J.App. at 75. As the sentencing judge's determination here is accorded deference and should be sustained unless clearly erroneous, we affirm.
 
 III.
 
 44
 On cross appeal, the government contends that the trial court erred in granting appellant Castellanos a two-level reduction for acceptance of responsibility. In reviewing a sentencing court's determination regarding whether a defendant has accepted personal responsibility for his criminal activity, the appropriate standard of review is the clearly erroneous standard. United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989).
 
 
 45
 Section 3E1.1 of the guidelines allows for a two-level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." This court has stated that the district judge's determination here is entitled to great deference on review because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments. Wilson, 878 F.2d at 923 (citing United States v. Thomas, 870 F.2d 174, 176 (5th Cir.1989)). Hence, a sentencing judge's determination, with respect to acceptance of responsibility, will not be disturbed unless it is without any foundation. Id.; U.S.S.G. Sec. 3E1.1 n. 5.
 
 
 46
 The United States contends that Castellanos is not entitled to a two-level reduction for acceptance of responsibility. The government argues that the only time that Castellanos demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct is when he made a "partial admission of responsibility" to the probation officer after trial. The government points out that prior to trial Castellanos had done nothing to indicate acceptance of responsibility. Further, the government notes that Castellanos only made his "partial" admission of responsibility during his second rather than his first post-trial interview with the probation officer. The government also relies on the statement by the probation officer that Castellanos could have provided more information and that many of his comments were self-serving. Finally, the government asserts that Castellanos' trial strategy, attempting to discredit a co-conspirator, and his unrepentant outburst before the district judge during sentencing reveal his lack of acceptance of responsibility.
 
 
 47
 Castellanos was not the most repentant of convicted criminals. Whether a defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility, however, is a question of fact entitled to the clearly erroneous standard. Wilson, 878 F.2d at 923. The clearly erroneous standard will nearly always sustain the judgment of the district court in this area. Id. This is not to say that there exists no set of circumstances upon which we would reverse the district court in this area. We only acknowledge that the district judge is in a unique position to evaluate a defendant's acceptance of responsibility. U.S.S.G. Sec. 3E1.1. Therefore, we find that the district judge's grant of the two-level reduction for acceptance of responsibility should be affirmed.
 
 IV.
 
 48
 For the foregoing reasons we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief District Judge for the Middle District of Tennessee, sitting by designation